Steven A. SCHULTZ and Madlyn S. Schultz, Plaintiffs,

v.

CORAL GABLES FEDERAL SAVINGS & LOAN ASSOCIATION, Defendant.

No. 80-3285-Civ-SMA.

United States District Court, S. D. Florida, Miami Division.

Jan. 21, 1981.

by Reserve Bank's detailed answers to plaintiff's interrogatories.

W. H. Stiles, Schultz & Stiles, Miami, Fla., for plaintiffs.

James A. Lanier, II, Padgett, Teasley, Niles & Shaw, Coral Gables, Fla., for defendant.

## ORDER ON REMAND

ARONOVITZ, District Judge.

Plaintiffs Steven and Madlyn Schultz (hereinafter "Schultz") originally filed this action in the Circuit Court of the 11th Judicial Circuit of Florida, in and for Dade County, seeking declaratory relief which would, in essence, bar Defendant Coral Gables Federal Savings & Loan Association (hereinafter "Coral Gables") from exercising certain rights under a mortgage provision known as a "due-on-sale" clause. On

December 12, 1980, Coral Gables removed the action to this Court and Plaintiffs have now moved to remand the case for want of federal subject matter jurisdiction.

According to the complaint,[1] on October 13, 1977, Jack and Ingert Polan [2] (hereinafter "Polan") executed a mortgage and promissory note in favor of Coral Gables, creating a first lien against certain real property simultaneously purchased by Polan. Paragraph 17 of the mortgage contained the following "due-on-sale" clause:

"Transfer of the Property; Assumption. If all or any part of the Property or an interest therein is sold or transferred by Borrower without Lender's prior written consent, excluding (a) the creation of a lien or encumbrance subordinate to this Mortgage, (b) the creation of a purchase money security interest for household appliances, (c) a transfer by devise, descent or by operation of law upon the death of a joint tenant or (d) the grant of any leasehold interest of three years or less not containing an option to purchase, Lender may, at Lender's option declare all the sums secured by this Mortgage to be immediately due and payable. Lender shall have waived such option to accelerate if, prior to the sale or transfer, Lender and the person to whom the Property is to be sold or transferred reach agreement in writing that the credit of such person is satisfactory to Lender and that the interest payable on the sums secured by this Mortgage shall be at such rate as Lender shall request. If Lender has waived the option to accelerate provided in this paragraph 17, and if Borrower's successor in interest has executed a written assumption agreement accepted in writing by Lender, Lender shall release Borrower from all obligations under this mortgage and the note.

If Lender exercises such option to accelerate, Lender shall mail Borrower notice of acceleration in accordance with paragraph 14 hereof. Such notice shall pro-

vide a period of not less than 30 days from the date the notice is mailed within which Borrower may pay the sums declared due. If Borrower fails to pay such sums prior to the expiration of such period, Lender may, without further notice or demand on Borrower, invoke any remedies permitted by paragraph 18 hereof."

This clause, in pertinent part, purportedly allows Coral Gables the option of declaring the balance on the promissory note due and payable immediately if the property securing the loan is sold or otherwise transferred by Polan without Coral Gables' prior written consent.

Schultz alleges that, on or about July 28, 1980, he and Polan executed a contract for the sale and transfer of the encumbered land. Under the terms of that contract, Schultz agreed, *inter alia*, to assume and pay the outstanding mortgage indebtedness. By letter dated August 1, 1980, Schultz advised Coral Gables of the contemplated sale and requested whatever documents were necessary to "cause the transfer on [Coral Gables'] books of the subject mortgage loan." *See* Exhibit C to Complaint. Schultz completed the necessary forms and, on August 27, 1980, Coral Gables informed him that he had been "approved . . . to purchase the property . . . and [to] assume the existing mortgage." *See* Exhibit F to Complaint. Coral Gables, however, further advised Schultz that the interest rate on the mortgage would be accelerated from the "existing" rate of 8.5% to 12.75% and that the monthly payments would be accordingly increased. In an ensuing series of letters and conversations with Coral Gables' personnel, *see, e. g.*, Exhibits G, H and I, Schultz stated that, in his view, Coral Gables could not, consistent with the decision in *First Federal S & L Ass'n v. Lockwood*, 385 So.2d 156 (Fla. 2d DCA 1980), "accelerate" the interest rate. He, therefore, would "not accept the acceleration . . . without contest." *See* Exhibit H.

---

1. Factual recitations set forth in the body of this opinion are derived, except where otherwise noted, from Plaintiffs' complaint and the exhibits attached thereto.

2. The Polans are not a named party to this action.

On September 29, 1980, Polan conveyed the subject real property to Schultz and, by letter dated October 2, 1980, Schultz notified Coral Gables of the transfer. *See* Exhibit M to Complaint. Schultz also informed Coral Gables that he would, in accordance with Coral Gables' "commitment letter of August 27, 1980," make mortgage payments bearing the increased 12.75% interest rate. *Id.* Those payments would be made, however, "under protest" and without waiver of "any rights to which [Schultz might] be entitled under the law . . . ." *Id.* Upon learning of the conveyance, which took place without its prior written consent, Coral Gables, by letter dated October 8, 1980, notified Schultz and Polan that the mortgage was "accelerated." *See* Exhibit N to Complaint. Shortly thereafter, on October 10, 1980, Schultz mailed a payment of $1010 to Coral Gables. The payment was purportedly made pursuant to Schultz's assumption of Polan's mortgage at the accelerated interest rate of 12.75%. It was, however, "made under protest." *See* Exhibit O to Complaint.

Understanding Schultz's letter and payment to be an "agreement . . . to make payments according to the conditions of assumption [previously] stated," Coral Gables, by letter dated October 17, 1980, "agreed to accept [Schultz] as mortgagee [sic] on the Polan Mortgage" and to notify Polan of Coral Gables' "waiver of its notice of acceleration." *See* Exhibit P to Complaint. Coral Gables also enclosed a written assumption agreement, requiring Schultz's execution and signature. After reviewing the assumption agreement, Schultz refused to execute it, deeming the agreement to be unsatisfactory because it allegedly "constitute[d] a novation and thus a voluntary waiver of [his] right to contest [Coral Gables'] demand that the interest rate be increased from 8½% to 12.75%." *See* Exhibit R to Complaint. In further response, on November 6, 1980, Schultz commenced this action, seeking the following declaratory relief:

a) a determination that Schultz's purchase and the related conveyance of the encumbered property from Polan to Schultz did not constitute an "impairment of [Coral Gables'] security" under the mortgage;

b) a declaration that, absent a transfer of title constituting an "impairment" of Coral Gables' security, Schultz is not required to pay Coral Gables the increased mortgage payments bearing interest at 12.75%;

c) a declaration that where, as here, the transfer of title does not constitute an impairment of the lender's security, Coral Gables cannot demand that Schultz pay an increased interest rate and, consequently, that Coral Gables may not accelerate its mortgage lien by foreclosure merely because Schultz refuses to pay the increased interest rate;

d) a declaration that, in the event Schultz refuses to pay Coral Gables the increased interest rate, such refusal will not constitute a default and Coral Gables cannot accelerate and enforce the mortgage by foreclosure proceedings provided that Schultz otherwise complies with the terms and conditions of the mortgage; and,

e) a judgment that Coral Gables owes Schultz an amount equal to the difference between the mortgage payments made under protest bearing interest at 12.75% and the mortgage payments if interest had been assessed at the original 8.5%.

Asserting jurisdiction under 28 U.S.C. § 1331 (federal question), Coral Gables removed the action to federal court on December 12, 1980. *See* Docket # 1. On December 16, 1980, Schultz moved to remand the action to state court pursuant to 28 U.S.C. § 1447(c), arguing that removal was improvident and that this Court is without jurisdiction over the suit. *See* Docket # 5. The parties subsequently submitted memoranda citing caselaw and statutory authority for their respective positions which, in turn, has required the Court to carefully consider whether this action "arises under" federal law within the meaning of 28 U.S.C. §§ 1331, 1441(b), thereby rendering removal proper. Having done so,

and for the reasons noted below, the Court concludes that there is not a properly cognizable basis for assertion of federal jurisdiction present here and, therefore, that this action was improvidently removed. Moreover, because the policies of judicial economy, comity and federalism will be served by denying removal, the Court is reinforced in this conclusion. Schultz's motion for remand will thus be granted.

### (I)

Although conceding that "there is a conspicuous absence in [Schultz's] . . . complaint of any reference to federal statutes or regulations," *see* Docket # 7 at p. 3, Defendant Coral Gables nonetheless asserts that this Court has jurisdiction over this case pursuant to 28 U.S.C. § 1331. Specifically, the bank contends that the Home Owners and Loan Act of 1933, 12 U.S.C. § 1461 *et seq.*, and specific regulations promulgated thereunder, 12 C.F.R. §§ 546.6–11(f) and (g),[3] preempt state regulation of due-on-sale clauses in the lending instruments of federal savings and loan associations such as Coral Gables. Because federal law exclusively governs the validity and exercisability of such due-on-sale clauses, Coral Gables argues, this action necessarily "arises under" federal law.[4]

Schultz, on the other hand, maintains that the request for declaratory relief here is predicated solely on Florida law. A review of the face of the complaint, Schultz contends, reveals that this action challenges neither the federal regulations which permit the inclusion by a federal savings and loan association of a due-on-sale clause, nor the validity of the particular due-on-sale provision in the Polan mortgage. Rather, Schultz argues, he is "merely attacking the attempted application by [Coral Gables] of [the due-on-sale clause] under the particular facts and circumstances in this case." *See*

---

**3.** The cited regulations were amended on October 5, 1979, *see* 44 Fed.Reg. 57386, *and now* appear at 12 C.F.R. Sections 548.8–3(f) and (g) as follows:

(f) *Due-on-sale clauses.* An association continues to have the power to include, as a matter of contract between it and the borrower, a provision in its loan instrument whereby the association may, at its option, declare immediately due and payable sums secured by the association's security instrument if all or any part of the real property securing the loan is sold or transferred by the borrower without the association's prior written consent. Except as provided in paragraph (g) of this section with respect to loans made after July 31, 1976, on the security of a home occupied or to be occupied by the borrower, exercise by the association of such option (hereafter called a due-on-sale clause) shall be exclusively governed by the terms of the loan contract, and all rights and remedies of the association and borrower shall be fixed and governed by that contract.

(g) *Limitations on the exercise of due-on-sale clauses.* With respect to any loan made after July 31, 1976, on the security of a home occupied or to be occupied by the borrower, a Federal association: (1) Shall not exercise a due-on-sale clause because of (i) creation of a lien or other encumbrance subordinate to the association's security instrument, (ii) creation of a purchase money security interest for household appliances; (iii) transfer by devise, descent, or operation of law on the death of a joint tenant; or (iv) granting of a leasehold interest of three years or less not containing an option to purchase; (2) shall not impose a prepayment charge or equivalent fee for acceleration of the loan by exercise of a due-on-sale clause; and (3) waives its option to exercise a due-on-sale clause as to a specific transfer if, before the transfer, the association and the person to whom the property is to be sold or transferred (the existing borrower's successor in interest) agree in writing that the person's credit is satisfactory to the association and that interest on sums secured by the association's security interest will be payable at a rate the association shall request. Upon such agreement and resultant waiver the association shall release the existing borrower from all obligations under the loan instruments, and the association is deemed to have made a new loan to the existing borrower's successor in interest.

**4.** An arguable basis for removal, not asserted by Coral Gables, is that it filed a counterclaim for declaratory relief in state court on a federal theory of preemption. Inasmuch as the right of removal is solely the defendant's, in this situation counter-defendant Schultz, and since Schultz has not sought removal, an attempt by Coral Gables to remove on this basis would simply be without merit and would be disposed of summarily. *See Rath Packing Co. v. Becker,* 530 F.2d 1295, 1303, *aff'd sub nom. Jones v. Rath Packing Co.,* 430 U.S. 519, 97 S.Ct. 1305, 51 L.Ed.2d 604 (1977).

Docket # 5 at p. 1. In short, he contests the exercise of the due-on-sale clause on the instant facts, citing *First Federal S & L Ass'n v. Lockwood*, 385 So.2d 156 (Fla. 2d DCA 1980) for the proposition that, absent proof of an impairment of a lender's security, Florida courts of equity will not enforce the clause.

### (II)

In assessing the propriety of removal in a case such as this, the rules for determining whether a controversy "arises under" federal law, thereby creating federal question jurisdiction, are well established. First, federal law must be an "essential" element of the plaintiff's cause of action. *Gully v. First National Bank in Meridian*, 299 U.S. 109, 112, 57 S.Ct. 96, 97, 81 L.Ed. 70 (1936). Second, the federal question which is the predicate for removal "must be disclosed upon the face of the complaint, unaided by the answer or by the petition for removal." *Id.* at 113, 57 S.Ct. at 98. As a general rule then, plaintiff's state court pleadings control removability. *See Paxton v. Weaver*, 553 F.2d 936 (5th Cir. 1977). Artful pleading cannot, however, be used to conceal an essentially federal claim. In this circuit, the accepted rule is that upon removal the court should inspect the complaint carefully to determine whether a federal claim is *necessarily presented by plaintiff*, even if plaintiff has couched his pleadings exclusively in terms of state law. *See In Re Carter*, 618 F.2d 1093, 1101 (5th Cir. 1980). Third, the federal question may not be inferred from a defense asserted or one expected to be made. *See Gully, supra*, 299 U.S. at 113, 57 S.Ct. at 98. Fourth, the federal question raised must be a "substantial" one. *Hagans v. Levine*, 415 U.S. 528, 536, 94 S.Ct. 1372, 1378, 39 L.Ed.2d 577 (1974). Finally, the party seeking removal bears the burden of satisfying each of these preconditions. *Phillips Petroleum Co. v. Texaco, Inc.*, 415 U.S. 125, 127–28, 94 S.Ct. 1002, 1003, 39 L.Ed.2d 209 (1974); *Wolgin v. State Mut. Investors*, 442 F.Supp. 974, 975 (E.D.Pa.1977).

Applying these principles here, the Court cannot say that Coral Gables has carried its burden of demonstrating that the above-mentioned prerequisites have been met. Schultz's complaint does not purport to assert any federal right, nor does it seek recovery under any federal statute or regulation. As a result of such pleading, federal law is not apparent on the face of the complaint and is not an "essential" element of plaintiff's cause of action. It necessarily follows that Schultz has raised no "substantial" federal question.

Coral Gables, nevertheless, urges this Court to "look beyond the verbiage of the state court complaint to the substance of Schultz's claimed grievance, and ... take judicial notice of any federal laws necessarily brought into play." Docket No. 7 at p. 3, *quoting, Rettig v. Arlington Hgts. Fed. Sav. & Loan Ass'n*, 405 F.Supp. 819, 823 (N.D.Ill. 1975). Inasmuch as it is a federally chartered savings and loan association whose lending practices are preemptively regulated by the Federal Home Loan Bank Board under 12 U.S.C. § 1464(a), and since the real nature of Schultz's claim is a challenge to the bank's lending practices, Coral Gables contends that federal law is implicated here. If not implicated in general terms, federal law is specifically involved, Coral Gables maintains, because federal regulations, *see n.2, supra*, expressly authorize the inclusion of due-on-sale clauses in its lending instruments. In support of this latter argument, Coral Gables notes that at least one federal court has ruled that these regulations preempt state law, such as Schultz attempts to rely upon, which would otherwise govern the validity and exercisability of such due-on-sale clauses. *See Glendale Federal Sav. and Loan Ass'n v. Fox*, 481 F.Supp. 616 (C.D.Cal.1979) and 459 F.Supp. 903 (C.D.Cal.1978).

In *Fox*, several California officials refused, pursuant to California law, to permit a federally chartered savings and loan association to make loans for a condominium development, because of the lender's use of due-on-sale clauses in its mortgages. The savings and loan association then sought a declaratory judgment which would deter-

mine that federal law exclusively governed the validity and exercise of the clause in the association's mortgages. Judge Byrne of the United States District Court for the Central District of California held that "[t]he language, history, structure and purpose of the Home Owner's Loan Act evidence a clear congressional intent to delegate to the Bank Board complete authority to regulate federal savings and loan associations and to preempt state regulations." *Id.* at 910. With respect to the due-on-sale regulations, Judge Byrne further determined that the Federal Home Loan Bank Board (FHLBB) had properly enacted regulations governing savings and loan associations' operations. These regulations, Judge Byrne concluded, exclusively governed and therefore preempted any state regulation relating to due-on-sale clauses included in the loan instrument of federally chartered savings and loan associations.

■ Assuming, *arguendo*, that this Court were to accept Coral Gables' invitation to go beyond the face of the complaint in order to find a federal question and that this Court were inclined to subscribe to Judge Byrne's opinion in *Fox*[5], we are nonetheless not persuaded that removal is proper or warranted here. Coral Gables' theory of federal preemption is in the nature of an affirmative defense. In other words, the federal question of preemption enters this case only by way of defense. Just as Schultz could not have created federal jurisdiction by anticipating the defense of federal preemption in his complaint, *see Phillips Petroleum Co. v. Texaco, Inc.*, 415 U.S. 125, 127, 94 S.Ct. 1002, 1003, 39 L.Ed.2d 209 (1974), Coral Gables cannot create removal jurisdiction by anticipating the defense of federal preemption in its petition for removal or its answer.

The Court, of course, recognizes that there is a line of cases holding that the defense of federal preemption, in itself, creates federal jurisdiction. *See, e. g., Price v.*

*Florida Federal Savings and Loan Association*, No. 79–974–Civ–J–M (M.D.Fla., filed May 23, 1980); *Bailey v. First Federal S & L Ass'n of Ottawa*, 467 F.Supp. 1139 (C.D. Ill.1979); *Rettig v. Arlington Hgts. Fed. Sav. & Loan Ass'n, supra*. In *Bailey*, for instance, a plaintiff borrower resisted removal to federal district court of an action seeking a declaration that a due-on-sale clause was an unconstitutional restraint on alienation and was against Illinois public policy. The federal court, while acknowledging that "plaintiff's complaint seeks relief only under Illinois law," *Bailey*, 467 F.Supp. at 1141, nevertheless concluded that the complaint disclosed a controversy in an area in which federal law had preempted state law. A federal question was, in the court's view, therefore implicit in the complaint, rendering removal proper.

The decision in *Bailey*, although certainly deserving of some measure of deference from this Court, is subject to criticism on at least two distinct grounds. First, while ostensibly ruling upon the threshold issue of whether removal was proper, the Court's decision in *Bailey* employs language which is tantamount to a decision on the merits of the case, i. e., state law has been preempted by federal law. This determination was not only premature; it is, by no means, unequivocally correct. *Compare Glendale Federal Sav. and Loan Ass'n v. Fox, supra* with *First Federal S & L Ass'n v. Lockwood, supra* and *Jurisch v. Arlington Heights Federal Savings And Loan Association*, Case No. 77C–4024 (N.D.Ill., filed May 26, 1978). Second, the decision in *Bailey* is simply against the weight of authority. When confronted with claims that a theory of recovery based solely upon state law is preempted by federal law, courts have generally treated these claims as akin to an affirmative defense and ruled that a defense of federal preemption is an insufficient predicate for removal. *See, e. g., Home Federal Savings and Loan Association v. Insurance Dept. of Iowa*, 571 F.2d

---

5. The preemption issue before the Court in Fox has been the subject of commentary in various journals. *See, e. g.*, O'Connell, The Due-On-Sale Clause in Florida: A Potential Battle-ground for Borrowers and Lenders, XXXI Univ. of Fla.L.Rev. 933, 954–67 (1979); Comment, The Due-On-Sale Clause: A Preemption Controversy, 10 Loy.L.A.L.Rev. 629, 631 (1977).

423 (8th Cir. 1978); *State of Washington v. American League of Professional Baseball Clubs*, 460 F.2d 654 (9th Cir. 1972); *People, etc. v. Glendale Fed. S. and L. Ass'n*, 475 F.Supp. 728, 731 (C.D.Cal.1979); *People of State of Nev. v. King*, 463 F.Supp. 749, 751 (D.Nev.1979); *Borzello v. Charles D. Sooy*, 427 F.Supp. 332 (N.D.Cal.1977); *Johnson v. First Federal Savings and Loan Association of Detroit*, 418 F.Supp. 1106 (E.D.Mich. 1976); *Marquette National Bank of Minneapolis v. First National Bank of Omaha*, 422 F.Supp. 1346 (D.Minn.1976).

Thus, in the recent decision in *People, etc. v. Glendale Fed. S. & L. Ass'n, supra*, presenting nearly identical facts to the case *sub judice*, the court determined that removal was improper. There, the state of California sought declaratory and injunctive relief under state law against a federal lender's exercise of due-on-sale clauses. The suit was removed to federal district court and the plaintiff sought remand. Applying the settled removal principles discussed above, the court concluded that where the plaintiff's complaint was based solely on state law, the defense of federal preemption did not create federal removal jurisdiction.

Quite aside from the court's specific holding in *People, etc. v. Glendale*, however, the decision is instructive in other respects. It is noteworthy, for instance, that the author of the opinion is Judge Byrne who, as noted above, had previously held in *Glendale Fed. Sav. & Loan Ass'n v. Fox, supra*, that 12 C.F.R. §§ 546.6–11(f) and (g) preempt any state regulation relating to due-on-sale clauses included in loan instruments of federally chartered savings and loan associations. That coincidence coupled with the fact that Judge Byrne studiously avoided intimating any view "regarding the merits of . . . [the] assertion that federal law preempts state regulation of due-on-sale clause . . .," *People, Etc., supra*, 475 F.Supp. at 734, underscores reservations this Court has concerning the propriety of deciding, as was done in *Bailey*, the merits of the asserted preemption defense in ruling whether removal is proper. The course which, in this Court's view, is preferable is that followed by Judge Byrne in *People, Etc.*, that is, to simply note that "[f]ederal preemption may offer a valid defense to plaintiff's state law claim, but the proper forum in which to raise that defense is state court." *Id.* 475 F.Supp. at 731.

Concededly, this approach is not altogether free from criticism. It creates a paradox because, on the one hand, a party such as Coral Gables may be able to bring, subject to the teachings of *Public Service Commission of Utah v. Wycoff Co.*, 344 U.S. 237, 73 S.Ct. 236, 96 L.Ed. 1368 (1957), an action in this Court seeking a declaration that federal law preempts state law but, on the other hand, that party cannot remove a state action to this Court on the same basis. An unseemly "race to the courthouse" may result. This paradox is, however, a consequence of the removal statutes and controlling caselaw and any resolution is not for this Court to undertake but, rather, is within the domain of Congress.

Balanced against and, in this Court's view, outweighing these criticisms, is the fact that this approach will have the incidental effect of furthering several other salutary policies. First, given the continually increasing caseload of the federal courts, it is essential to construe narrowly the rules in removal cases. Clearly, Congress could, if it so desired, grant to defendants the right to remove an action if they assert a federal defense to a plaintiff's state law claim. *See* H. Wechsler, *Federal Jurisdiction and the Revision of the Judicial Code*, 13 Law & Contemp. Prob. 216, 233–34 (1948). The removal procedure, *see* 28 U.S.C. § 1441 *et seq.*, however, reflects a Congressional decision to severely limit the right to remove a state action to federal court. *See La Chemise LaCoste v. Alligator Co., Inc.*, 506 F.2d 339, 344 (3d Cir. 1974). To adopt the expansive view of removal urged by Coral Gables, which finds no support in the removal statute and slim precedential support in the caselaw, would only further magnify the backlog which now exists in our federal courts.

Secondly, considerations of comity and federalism militate against removal here. This Court is reluctant to inject itself in a case, such as this, which involves issues traditionally governed by state law and traditionally and competently dealt with by state judicial tribunals sitting in equity. It is noteworthy that, in analogous cases involving predominance of state law and matters intimately connected with the sovereign power of the state, federal courts have concluded that abstention is warranted and that, in these limited circumstances, abstention is not an abdication of a federal court's duty to adjudicate a controversy properly before it. *See generally, Colorado River Water Conservation District v. United States,* 424 U.S. 800, 813–16, 96 S.Ct. 1236, 1244–46, 47 L.Ed.2d 483 (1976); *Burford v. Sun Oil Co.,* 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1443 (1943). Moreover, under our dual system of courts, state courts are expected to, and are fully competent to, decide issues like the defense of preemption raised by Coral Gables. Review of those decisions is available in the state appellate system and, if necessary, by seeking direct review before the United States Supreme Court.

In sum, while considerations of federal court workload, comity and federalism, without more, would arguably be insufficient reasons to deny Coral Gables an otherwise properly assertable right of removal, those considerations, when coupled with the Court's conclusion that a defense of federal preemption is an insufficient predicate for federal question removal, compel this Court to find that removal is improvident here. It is, therefore

ORDERED AND ADJUDGED that this action be REMANDED to the Circuit Court of the 11th Judicial Circuit of Florida, in and for Dade County.