533 F.Supp. 1041 (1982)
FIRST FEDERAL SAVINGS AND LOAN ASSOCIATION OF HARRISON, ARKANSAS, an association organized and operating as an instrumentality of the United States of America pursuant to Sec. 5(a) of the Home Owners' Loan Act of 1933, as amended 12 U.S.C. Sec. 1464(a), Plaintiff,
v.
James L. MYRICK and Lois C. Myrick, his wife; David A. Boss and Cheryl L. Boss, his wife, Defendants,
v.
COOPER HOMES, INC., Third-Party Defendant.
No. 81-6095.
United States District Court, W. D. Arkansas, Hot Springs Division.
February 23, 1982.
*1042 Frank H. Bailey, Bailey & Paden, Mountain Home, Ark., for plaintiff.
Stuart W. Hankins, Hankins, Hicks & Madden, North Little Rock, Ark., for defendants Myrick.
Michael G. Thompson, Friday, Eldredge & Clark, Little Rock, Ark., for third-party defendant.

MEMORANDUM OPINION
WATERS, Chief Judge.
This is an action in which a federally chartered savings and loan institution seeks a declaration that the due-on-sale clause of its mortgage is valid and enforceable against defendants, Mr. and Mrs. James Myrick and Mr. and Mrs. David Boss. The case is before the Court on the motions for summary judgment of plaintiff, First Federal Savings and Loan Association of Harrison, Arkansas, and the defendants, Mr. and Mrs. Myrick.
In May, 1977, Mr. and Mrs. Myrick borrowed $45,400.00 from First Federal Savings and Loan Association of Harrison, Arkansas. To secure the note, the Myricks executed a mortgage in favor of First Federal on certain property located in Hot Springs Village, Garland County, Arkansas. The mortgage provided, in relevant part:
(h) Acceleration. The maturity of the principal indebtedness secured hereby may be accelerated in any of the following events:
* * * * * *
(7) If the Mortgagor or assignee sells or conveys (or contracts to sell or convey) all or any part of the mortgaged property without the written consent of the holder of said note.
The Myricks made all the monthly payments due on the note, but on July 14, 1981, contracted to sell the property to Mr. and Mrs. David Boss. The Bosses' real estate agent which handled the Myrick-Boss sale was Cooper Homes, Inc.
In July, 1981, First Federal received notice that the house had been insured by the Bosses. First Federal wrote to the Myricks asking that, as the property had been sold, they pay off the entire amount due on the note or have their buyers "contact our office for a preferred rate." First Federal refused to accept all monthly payments from the Myricks, demanding the full amount due on the note.
On October 26, 1981, First Federal commenced this action for declaratory relief. The defendants Myrick answered and brought a counterclaim against First Federal for a declaration that the due-on-sale clause is unenforceable and for their costs and attorney's fees. The Myricks also brought a cross-action against the Bosses seeking rescission of the contract for sale if the due-on-sale clause be held valid and enforceable against the Myricks. The Myricks *1043 also filed a third-party complaint against Cooper Homes, Inc., alleging that Cooper's agent made fraudulent misrepresentations concerning the due-on-sale clause which induced the Myricks to enter into the contract for sale with the Bosses.
The Bosses have never responded to the complaint or the cross-complaint and it appears that service has not been accomplished.

JURISDICTION
The plaintiff has pleaded that there is complete diversity between itself and the Myricks who are citizens of Texas and the Bosses who are citizens of Indiana. It also has pleaded that the amount in controversy exceeds $10,000.00. The Court takes judicial notice that Hot Springs Village is a resort community and that the interest rates for home financing in July, 1981, greatly exceed the 9% per annum rate set forth in the First FederalMyrick note and mortgage. As the parties have not challenged the jurisdictional facts as pleaded and as the Court has noticed certain facts which lend support to the allegations, we hold that subject matter jurisdiction exists under 28 U.S.C. § 1332.
This action is to be distinguished from others involving the validity of due-on-sale clauses wherein subject matter jurisdiction is invoked under 28 U.S.C. § 1331, general federal question jurisdiction, or 28 U.S.C. § 1337, jurisdiction for cases arising under acts regulating commerce. In those instances, most federal courts have held they were without subject matter jurisdiction as the issue of federal preemption is a defense in actions involving the validity of due-on-sale clauses. People v. Glendale Fed. S. & L. Assoc., 475 F.Supp. 728 (C.D. Calif.1979); Smart v. First Fed. S. & L. Assoc. of Detroit, 500 F.Supp. 1147 (E.D. Mich.1980); Schultz v. Coral Gables Fed. S. & L. Assoc., 505 F.Supp. 1003 (S.D.Fla. 1981). "It is not enough [under 28 U.S.C. §§ 1331 or 1337] that plaintiff alleges some anticipated defense to his cause of action and asserts that the defense is invalidated by some provision of the Constitution of the United States." Louisville & Nashville RR v. Mottley, 211 U.S. 149, 152, 29 S.Ct. 42, 43, 53 L.Ed. 126 (1908). See Smart v. First Federal Savings & Loan Assoc. of Detroit, 500 F.Supp. 1147 (E.D.Mich.1980); Schultz v. Coral Gables Federal Savings & Loan Assoc., 505 F.Supp. 1003 (S.D.Fla.1981). See, also, Lawrence County, South Dakota v. State of South Dakota, 668 F.2d 27 (8th Cir. 1982) ("This defensive assertion of the preemption doctrine, however, cannot convert the action into one arising under federal law...." p. 7; "... neither the assertion nor the fact of preemption of plaintiff's state law claim provided a basis for federal jurisdiction." p. 8).

FEDERAL PREEMPTION
In Tucker v. Pulaski Federal Savings & Loan Assoc., 252 Ark. 849, 481 S.W.2d 725 (1972), the Arkansas Supreme Court held a due-on-sale clause cannot be used to accelerate the indebtedness unless the mortgagee in good faith believed the conveyance impaired its security or otherwise hurt its prospect of repayment. The question of federal preemption was not before the Arkansas Supreme Court and the Court addressed the issue of acceleration in terms of equitable principles.
The Home Owners' Loan Act of 1933, 12 U.S.C. § 1461 et seq., authorized the creation of federally-chartered savings and loan institutions which would be regulated by the Federal Home Loan Bank Board. 12 U.S.C. § 1464(a) authorizes the Board to prescribe regulations for the organization and operation of savings and loan associations. In 1976 the Board promulgated regulations authorizing the federal associations to include due-on-sale clauses in their loan instruments:
(f) Due-on-sale clauses. An association continues to have the power to include, as a matter of contract between it and the borrower, a provision in its loan instrument whereby the association may, at its option, declare immediately due and payable sums secured by the association's security instrument if all or any part of the real property securing the loan is sold *1044 or transferred by the borrower without the association's prior written consent.
12 C.F.R. § 545.8-3(f) (1981). (Before the 1980 ed. C.F.R., the regulation was codified as 12 C.F.R. § 545.6-11(f).). The same regulation set out the limitations on the exercise of due-on-sale clauses:
(g) Limitations on the exercise of due-on-sale clauses. With respect to any loan made after July 31, 1976, on the security of a home occupied or to be occupied by the borrower, a Federal association: (1) Shall not exercise a due-on-sale clause because of (i) creation of a lien or other encumbrance subordinate to the association's security instrument; (ii) creation of a purchase money security interest for household appliances; (iii) transfer by devise, descent, or operation of law on the death of a joint tenant; or (iv) granting of a leasehold interest of three years or less not containing an option to purchase; (2) shall not impose a prepayment charge or equivalent fee for acceleration of the loan by exercise of a due-on-sale clause; and (3) waives its option to exercise a due-on-sale clause as to a specific transfer if, before the transfer, the association and the person to whom the property is to be sold or transferred (the existing borrower's successor in interest) agree in writing that the person's credit is satisfactory to the association and that interest on sums secured by the association's security interest will be payable at a rate the association shall request. Upon such agreement and resultant waiver the association shall release the existing borrower from all obligations under the loan instruments, and the association is deemed to have made a new loan to the existing borrower's successor in interest.
12 C.F.R. § 545.8-3(g) (1981) (Before the 1980 ed. C.F.R., the regulation was codified as 12 C.F.R. § 545.6-11(g).).
The plaintiff contends that the principles announced in Tucker v. Pulaski Federal Savings & Loan Assoc., 252 Ark. 849, 481 S.W.2d 725 (1972), are preempted by the federal law recognizing the validity of due-on-sale clauses.
Art. 6, § 2, of the United States Constitution provides as follows:
This Constitution, and the laws of the United States which shall be made in pursuance thereof; and all treaties made, or which shall be made, under the authority of the United States, shall be the supreme law of the land; and the judges in every state shall be bound thereby, anything in the Constitution or laws of any state to the contrary notwithstanding.
The Supremacy Clause invalidates state laws in two situations. In the first and rarer circumstance, it invalidates all state laws whether or not they are consistent with federal law. This "complete ouster of state power" must be the clear and manifest purpose of Congress "either [because] the nature of the regulated subject matter permits no other conclusion, or [because] the Congress has unmistakenly so ordained." Florida Lime & Avocado Growers v. Paul, 373 U.S. 132, 142, 83 S.Ct. 1210, 1217, 10 L.Ed.2d 248 (1963).
In the second and more frequent situation, the Supremacy Clause invalidates conflicting state laws, not because the federal legislation has completely occupied the field, but because the state law is in conflict with the federal. See DeCanas v. Bica, 424 U.S. 351, 357 n. 5, 96 S.Ct. 933, 937 n.5, 47 L.Ed. 43 (1976).
This Court is aware of only three reported cases which have decided the issue of federal preemption with respect to due-on-sale clauses. Although the issue has been raised in several other cases, the issue of preemption was not necessary for decision. See, e.g., Williams v. First Fed. S. & L. Assoc. of Arlington, 651 F.2d 910, 922 n. 28 (4th Cir. 1981), wherein the Court stated:
We are fortunately spared the complications associated with what to do where a due-on-sale clause is valid under federal law, but in a particular case leads to a result which state law would disallow as inequitable. See First Federal Savings and Loan Association of Englewood v. Lockwood, 385 So.2d 156, 160 (Fla.App. *1045 1980) ("The true issue before us is not whether a due-on-sale clause may be authorized or even required in a federal association mortgage instrument, but whether the due-on-sale clause must be automatically enforced by a state court without regard to traditional principles of equity.... We answer the question by stating that a plaintiff who initiates a suit in equity must be subject to all of the applicable consequences of that action and not merely those to which he chooses to submit."). Cf. Tucker v. Pulaski Federal Savings & Loan Association, 252 Ark. 849, 853, 481 S.W.2d 725, 728 (1972) ("... appellee cannot, simply on the basis of the quoted clause, accelerate the note.... This procedure cannot be countenanced in a court of equity."). Of course, the election of the Potes and the Saltos to initiate the action in federal, rather than state, court weakens their posture on that point.
The three reported cases which have addressed the issue of federal preemption with respect to the regulations authorizing due-on-sale clauses are Glendale Fed. S & L Assoc. v. Fox, 459 F.Supp. 903 (C.D.Calif. 1978), 481 F.Supp. 616 (C.D.Calif.1979), vacated for lack of justiciable controversy, 663 F.2d 1078 (9th Cir. 1981) (illegible filemark); Conference of Fed. S & L Assocs. v. Stein, 495 F.Supp. 12 (E.D.Calif.1979), vacated for lack of justiciable controversy, 663 F.2d 1078, (9th Cir. 1981); and First Fed. S & L Assoc. of Gadsen County v. Peterson, 516 F.Supp. 732 (N.D.Fla.1981). In Glendale Fed. S. & L. Assoc. v. Fox, supra, and Conference of Fed. S & L Assocs. v. Stein, supra, the lower courts held that the entire area of regulation of federally chartered savings and loan institutions had been preempted by the Home Owners' Loan Act of 1933, 12 U.S.C. § 1461 et seq., and therefore, the California statutes prohibiting acceleration under due-on-sale clauses were invalid. In another aspect of Conference of Fed. S & L Assocs. v. Stein, the lower court held that California statutes prohibiting "redlining," i.e., discrimination in making housing loans, were invalid as the HOLA of 1933 had preempted every aspect of regulating federally chartered savings and loan institutions. The anti-redlining decision was affirmed by the Court of Appeals for the Ninth Circuit, 604 F.2d 1256 (9th Cir. 1979), on the grounds of preemption and the United States Supreme Court affirmed without opinion, 445 U.S. 921, 100 S.Ct. 1304, 63 L.Ed.2d 754 (1980).
In First Fed. S. & L. Assoc. of Gadsen County v. Peterson, 516 F.Supp. 732 (N.D. Fla.1981), the state courts of Florida had refused to enforce due-on-sale clauses on the grounds that enforcement was inequitable. In holding that the federal regulations governing due-on-sale clauses had preempted the contrary state law, the Court declined to hold that every aspect of federally chartered savings and loan institutions had been preempted. Instead, it focused narrowly on the conflict between the state equitable principles and the purpose of the federal regulation and held the state law was preempted.
We believe the analysis in First Fed. S. & L. Assoc. of Gadsen County v. Peterson, ibid., is correct in all regards. We hold that the federal regulations have preempted the equitable principles announced in Tucker v. Pulaski Fed. S. & L. Assoc., 252 Ark. 849, 481 S.W.2d 725 (1972), and that the due-on-sale clauses are enforceable by federally chartered savings and loan institutions in accord with the limitations set forth in the federal regulations.
We point out that Congress vested the Home Loan Bank Board with the duty and authority to promulgate regulations governing the operation of federally chartered savings and loan institutions. 12 U.S.C. § 1464(a). The regulations enacted pursuant to such board administrative authority have the force and effect of statutory law. Bethlehem Steel Co. v. New York State Labor Relations Board, 330 U.S. 767, 67 S.Ct. 1026, 91 L.Ed. 1234 (1947). The regulations not only authorize due-on-sale clauses, but also contain limitations on their exercise. As the regulations do not limit the exercise of due-on-sale clauses to instances in which the lending institution has *1046 grounds for believing its security is impaired, the state law announced in Tucker v. Pulaski Federal S. & L. Assoc., 252 Ark. 849, 481 S.W.2d 725 (1972), is in direct conflict with the federal regulations. The conflict is irreconcilable and under established principles, state law must give way.

DISCLOSURE
The defendants contend that even if the federal regulations preempt the equitable principles announced in Tucker v. Pulaski Fed. S. & L. Assoc., 252 Ark. 849, 481 S.W.2d 725 (1972), the due-on-sale clause is unenforceable against them because plaintiff failed to adequately inform defendants of the clause and the "variable interest rate" it imposed.
In an affidavit attached to defendants' response, Mr. Myrick states that he was not notified when First Federal began to include due-on-sale clauses in its mortgages, and that although he signed the mortgage which is the subject of this action, he did so without reading it.
It is fundamental that in the absence of deceit or fraud, one who signs a written contract which he has had an opportunity to read, is bound by its terms. N & D Fashions, Inc. v. DHJ Industries, Inc., 548 F.2d 722 (8th Cir. 1976); Hanson Motor Co. v. Young, 223 Ark. 191, 265 S.W.2d 501 (1954).
After averring that he did not read the mortgage before signing it, Mr. Myrick states:
We believe that First Federal intentionally concealed the existence of the "due-on-sale" clause in its mortgage in dealing with us without making any reference to it in the promissory note or loan closing documents and without sending us any notice of its change in policy in requiring increased interest rates prior approving loan assumptions when property mortgaged to it was sold. This hidden provision in our mortgage to First Federal has nothing to do with our prompt payment of our financial obligation to First Federal or with the protection of First Federal's security and has been used to coerce the buyers of our property to pay a higher interest rate than charged to us when we originally closed the loan.
The law distinguishes between mere silence and misstatements or other affirmative facts of deceit or concealment. Mr. Myrick's affidavit establishes that the plaintiff remained silent about the due-on-sale clause, except for setting forth the clause in clear, unambiguous terms within the mortgage. The affidavit of Mr. Myrick does not contain any allegation that plaintiff made misrepresentations or took other affirmative steps to prevent the Myricks from learning of the written due-on-sale clause. In the absence of an allegation that plaintiff made a misrepresentation or committed an act of concealment, the defendants cannot avoid the due-on-sale clause merely by stating that they did not read the mortgage.
Defendants also contend that the due-on-sale clause is unenforceable because it in effect provides for a variable rate of interest and plaintiff did not make the disclosure governing variable interest rates required by 12 C.F.R. § 226.810, Regulation Z, under the Truth-In-Lending Act. Defendants' characterization of the clause is erroneous. The clause provides for principal to be accelerated upon the sale or contract of sale of the property. As between the plaintiff and the debtors, the Myricks, the interest rate never varied.
As there are no facts in dispute precluding plaintiff's motion for summary judgment, a separate judgment for the plaintiff will be entered in accord with this opinion.