604 F.2d 1256
 CONFERENCE OF FEDERAL SAVINGS AND LOAN ASSOCIATIONS, a
California Corporation, and Alameda Federal Savings and Loan
Association, Bay View Federal Savings and Loan Association,
California Federal Savings and Loan Association, Coast
Federal Savings and Loan Association, Eureka Federal Savings
and Loan Association, First Federal Savings and Loan
Association of San Diego, First Federal Savings and Loan
Association of Santa Monica, First Federal Savings and Loan
Association of South Pasadena, Home Federal Savings and Loan
Association of San Diego, Orange Belt Federal Savings and
Loan Association, Pacific Federal Savings and Loan
Association, Peoples Federal Savings and Loan Association,
Pomona First Federal Savings and Loan Association, Provident
Federal Savings and Loan Association of Riverside, Redlands
Federal Savings and Loan Association, Republic Federal
Savings and Loan Association, San Francisco Federal Savings
and Loan Association, Santa Fe Federal Savings and Loan Assn.
v.
Alan L. STEIN, Successor in Office to Richard T. Silberman,
as Secretary of the Business and Transportation
Agency of the State of California,
Defendant- Appellant.
FEDERAL HOME LOAN BANK BOARD, Cross Claimant-Appellee,
v.
Alan L. STEIN, etc., Cross Defendant-Appellant.
 No. 78-3201.
 United States Court of Appeals,
Ninth Circuit.
 Sept. 26, 1979.
 
 George Deukmejian, Atty. Gen., Arthur C. deGoede, Asst. Atty. Gen., Joseph H. O'Heron, W. Gary Kurtz, Deputy Attys. Gen., Richard M. Mosk (argued), Los Angeles, Cal., for defendant-appellant.
 McKenna & Fitting, Williaam F. McKenna, Aaron M. Peck (argued), G. Howden Fraser, Terry O. Kelly, Los Angeles, Cal., argued, for plaintiffs-appellees.
 Jack Greenberg (argued), Beth, J. Lief, Eric Schnapper, Attys. N.A.A.C.P. Legal Defense and Education Fund, Inc., Amicus Curiae.
 Anse P. Jones, Gen. Counsel, Harold B. Shore, Associate Gen. Counsel, Harvey Simon, Asst. Gen. Counsel (argued), Steven J. Toll, for Federal Home Loan Bank Bd.
 On Appeal from the United States District Court for the Eastern District of California.
 Before MERRILL and HUG, Circuit Judges, and PORT,* District Judge.
 MERRILL, Circuit Judge:
 
 
 1
 The question presented on this appeal is whether the appellant, Secretary of the Business and Transportation Agency of the State of California, has power to regulate federal savings and loan associations under California's Housing Financial Discrimination Act of 1977, Cal.Health & Safety Code §§ 35800 Et seq. (the Act). The district court held that he has not. It adjudged that "the (Federal Home Loan) Bank Board's exercise of its plenary regulatory power granted by Congress under (the Home Owners' Loan Act) preempts legislation by the State of California which attempts to subject federal savings and loan associations in California to state regulation and discipline in the area of anti-redlining practices." We affirm.
 
 
 2
 The Home Owners' Loan Act of 1933, 12 U.S.C. §§ 1461 Et seq. (HOLA), was the result of congressional dissatisfaction with state law and practice in the financing of home construction. The first federal effort was through the Home Loan Bank Act of 1932. This failed to attack the problem satisfactorily. By 1933, 40 percent of all home loans in the United States were in default. Under date of April 13, 1933, President Roosevelt wrote the Congress:
 
 
 3
 "I ask the Congress for legislation to protect small home-owners from foreclosure and relieve them of a portion of the burden of excessive interest and principal payments incurred during the period of higher values and higher earning power."
 
 
 4
 H.R.Doc. No. 19, 73d Cong., 1st Sess. 1618, 1702 (1933).
 
 
 5
 The result was HOLA, a radical and comprehensive response to the inadequacies of the existing state systems. A Federal savings and loan system was created. The Federal Home Loan Bank Board (the Bank Board) was created with extremely broad powers to promulgate rules and regulations. 12 U.S.C. § 1464(a) provides in part:
 
 
 6
 "In order to provide local mutual thrift institutions in which people may invest their funds and in order to provide for the financing of homes, the Board is authorized, under such rules and regulations as it may prescribe, to provide for the organization, incorporation, examination, operation, and regulation of associations to be known as 'Federal Savings and Loan Associations' * * * and to issue charters therefor, giving primary consideration to the best practices of local mutual thrift and home-financing institutions in the United States."
 
 
 7
 With reference to HOLA, one writer has stated:
 
 
 8
 " * * * the states had developed a hodgepodge of savings and loan laws and regulations, and Congress hoped that FHLBB rules would set an example for uniform and sound savings and loan regulations."
 
 
 9
 T. Marvell, The Federal Home Loan Bank Board, p. 26 (1969).
 
 
 10
 Pursuant to its authority, the Bank Board has promulgated regulations comprehensively dealing with the creation and operation of federal savings and loan associations. They deal with the manner in which capital may be raised by a federal association, earnings distributed, and withdrawals effectuated. See 12 C.F.R. §§ 545.1-.4. The powers of a federal savings and loan association to borrow, give security, issue notes, bonds, debentures or obligations are prescribed and authorized. 12 U.S.C. § 1464(b)(2). The authority of a federal association to make and purchase loans and otherwise invest in real estate is subject to regulation. 12 U.S.C. § 1464(c); 12 C.F.R. § 545.6.
 
 
 11
 In recent years the Congress, in various civil rights statutes, has directed its attention to specific problems of borrowers relating to discrimination in the extending of credit and granting of loans. Title VIII of the Civil Rights Act of 1968, 42 U.S.C. §§ 3601 Et seq.; The Equal Credit Opportunity Act (ECOA), 15 U.S.C. §§ 1691 et seq.; The Home Mortgage Disclosure Act (HMDA), 12 U.S.C. §§ 2801 Et seq. Language in these acts and in their legislative histories indicates a congressional intent that they shall not result in federal pre-emption of similar rights granted by state statutes. For example, ECOA states in part:
 
 
 12
 "This subchapter does not annul, alter, or affect, or exempt any person subject to the provisions of this subchapter, from complying with, the law of any State with respect to credit discrimination, except to the extent that those laws are inconsistent with any provision of this subchapter, and then only to the extent of the inconsistency. The (Federal Reserve) Board is authorized to determine whether such inconsistencies exist. The Board may not determine that any State law is inconsistent with any provision of this subchapter if the Board determines that such law gives greater protection to the applicant."
 
 
 13
 15 U.S.C. § 1691d(f). The legislative history of ECOA contains a congressional statement to the following effect:
 
 
 14
 "The Committee intends that those state laws which give greater protection to the applicant, as determined by the Board, shall apply equally to all credit granting institutions doing business in that state."
 
 
 15
 1976 U.S.Code Cong. & Admin.News, pp. 403, 414.
 
 
 16
 All of these acts provide the Bank Board with authority to promulgate rules and regulations prohibiting discrimination.
 
 
 17
 Pursuant to this authority regulations have been adopted by the Bank Board. They prohibit discrimination on the basis of race, color, religion and sex, and also prohibit red-lining credit discrimination based on the characteristics of the neighborhood surrounding the borrower's dwelling. The regulations provide for monitoring of federal savings and loan associations by the Bank Board and establish an enforcement mechanism and require posting of notices in a prescribed form.
 
 
 18
 California's Housing Financial Discrimination Act of 1977 contains provisions prohibiting discrimination in lending "due * * * to the consideration of race, color, religion, sex, marital status, national origin, or ancestry" of the borrower, Cal.Health & Safety Code § 35811, or "due * * * to the consideration of conditions * * * in the neighborhood or geographic area surrounding the housing accommodation" of the borrower, Id. § 35810 (the practice commonly known as "red-lining"). The Act also provides: "The secretary (of the Business and Transportation Agency) * * * shall monitor and investigate the lending patterns and practices of financial institutions for compliance * * *." Id. at § 35815. The Act provides procedures for the resolution of complaints. Complaints may be filed with the Secretary by aggrieved applicants and the Secretary shall determine whether a violation has occurred, shall make findings, may issue cease and desist orders and impose penalties, all subject to judicial review. Id. §§ 35820-23. Notices in a prescribed form are required to be posted advising loan applicants of their rights and where complaints may be filed. Id. § 35830.
 
 
 19
 After passage of the state act, appellant, by directive of December 15, 1977, notified all lending institutions operating in California, including federal savings and loan associations, that they would be required to abide by the provisions of the Act. The Federal Home Loan Bank Board responded with an opinion that the state act did not apply to federal savings and loan associations. On February 6, 1978, the Conference of Federal Savings and Loan Associations and certain federal associations, appellees herein, brought this suit against appellant, the Secretary of the state agency. The Bank Board was also sued nominally as a necessary party. Appellees sought a declaration that the Act was pre-empted by federal legislation and regulations. The Bank Board filed a cross claim against appellant, seeking to enjoin him from attempting to enforce the provisions of the state act against the federal associations.
 
 
 20
 Appellant responded by bringing suit against the West Coast Federal Savings and Loan Association in Superior Court of San Mateo County, California (People v. West Coast Federal Savings and Loan Ass'n, No. 220012 (Cal.Super.Ct. Feb. 28, 1978)). The defendant was charged with having violated state law by refusing to comply with appellant's directive of December 15, 1977. Appellant sought statutory damages in the sum of $2500 for each failure to post notice and each failure to supply a loan applicant with a copy of appellant's prescribed notice.
 
 Jurisdiction
 
 21
 Appellant contends that there is no federal question involved in this action, and that the district court was without jurisdiction. He argues that pre-emption is only a federal defense to a potential state claim made under the Act, citing Public Service Commission v. Wycoff Co., 344 U.S. 237, 248, 73 S.Ct. 236, 242, 97 L.Ed. 291 (1952). There, a carrier sought judgment declaring that it was engaged in interstate commerce and enjoining the Public Service Commission of Utah from interfering with its interstate shipments. The Court stated:
 
 
 22
 "The plaintiff is seeking to establish a defense against a cause of action which the declaratory defendant may assert in the Utah courts. Respondent here has sought to ward off possible action of the petitioners by seeking a declaratory judgment to the effect that he will have a good defense when and if that cause of action is asserted."
 
 
 23
 Relief was denied.
 
 
 24
 That case is distinguishable, however. There, the majority concluded that there was no proof of any threatened or probable act by the state commission which might cause the irreparable injury essential to equitable relief or which could serve to create the actual controversy necessary for declaratory judgment jurisdiction. Here, an actual conflict exists created by the conflicting positions taken by appellant and the Bank Board. See First Federal Savings and Loan Ass'n of Boston v. Greenwald, 591 F.2d 417, 423 n. 8 (1st Cir. 1979).
 
 
 25
 "Both the state and federal regulations are currently in effect, subjecting the associations to conflicting requirements * * *."
 
 
 26
 An actual justiciable controversy is thus presented.Pre-Emption
 
 
 27
 Appellees argue and the district court held that the state act does not apply to federal savings and loan associations since the field of regulatory control is pre-empted by federal regulations.
 
 
 28
 Pre-emption of state legislation by federal acts arises from the Supremacy Clause, U.S.Const. art. VI, cl. 2. Courts begin their analysis of a potential pre-emption issue with the "assumption that the historic police powers of the States (are) not to be superseded by the Federal Act unless that (is) the clear and manifest purpose of Congress." Rice v. Santa Fe Elevator Corp., 331 U.S. 218, 230, 67 S.Ct. 1146, 1152, 91 L.Ed. 1447 (1947); Jones v. Rath Packing Co., 430 U.S. 519, 525, 97 S.Ct. 1305, 51 L.Ed.2d 604 (1977). However, implicit pre-emption can be found where the scheme of federal regulation is so pervasive as to make reasonable the inference that there is no room for state action. Ray v. Atlantic Richfield Co., 435 U.S. 151, 157, 98 S.Ct. 988, 55 L.Ed.2d 179 (1978).
 
 
 29
 Appellant urges that there is no pre-emption. He finds no conflict between the state and federal regulations. More importantly, he argues that the federal statutes which provide the authority for the Bank Board's regulations specifically call for no pre-emption of state statutes that provide equal or greater protection to borrowers.
 
 
 30
 The state act and the regulations of the Bank Board can be divided into two groups. First are the substantive nondiscrimination provisions those conferring substantive rights upon borrowers to be free from discriminatory practices in the lending of money or extending of credit. No dispute presently exists as to those. We are not faced with a suit by a borrower against a federal association charging a violation of a substantive state regulation. If the nonpre-emption intent of the Civil Rights Acts (that the applicant should have the benefit of what, in the judgment of the Federal Reserve Board is the greater protection afforded) is to be given effect, it would apply to those substantive rights. Whether pre-emption exists as to them is a question we need not and do not reach.
 
 
 31
 Constituting a second group are the procedural aspects of the Act and the federal regulations those providing for regulatory control over the lending institutions to insure that the substantive rights of borrowers are respected. These include regulations providing for monitoring, for enforcement and complaint resolution mechanism and for notice. It is the regulatory authority of appellant over the federal associations in these respects that is here in dispute.
 
 
 32
 In our judgment the regulatory control of the Bank Board over federal savings and loan associations is so pervasive as to leave no room for state regulatory control. As this court noted in Meyers v. Beverly Hills Federal Savings & Loan Ass'n., 499 F.2d 1145, 1147 (9th Cir. 1974):
 
 
 33
 "Pursuant to its valid statutory authority, the Federal Home Loan Bank Board has promulgated comprehensive regulations covering all aspects of every federal savings and loan association 'from its cradle to its corporate grave.' People of State of California v. Coast Federal Savings and Loan Ass'n., S.D.Cal.1951, 98 F.Supp. 311, 316."
 
 
 34
 The broad regulatory authority over the federal associations conferred upon the Bank Board by HOLA does wholly pre-empt the field of regulatory control over these associations. If state-conferred rights are to be enforced against the federal associations by any regulatory body (a question we do not reach), enforcement must be by the Bank Board.
 
 
 35
 Judgment affirmed.
 
 
 
 *
 Honorable Edmund Port, Senior United States District Judge of the Northern District of New York, sitting by designation