516 F.Supp. 732 (1981)
FIRST FEDERAL SAVINGS AND LOAN ASSOCIATION OF GADSDEN COUNTY, a corporation organized under the laws of the United States of America, Plaintiff,
v.
H. B. PETERSON and Ruth E. Peterson, Defendants.
MUTUAL FEDERAL SAVINGS AND LOAN ASSOCIATION OF PENSACOLA, Plaintiff,
v.
William M. ANGELO and Debi P. Angelo, Husband and Wife, Tracy V. Herring and Brenda G. Herring, Husband and Wife, Defendants.
MUTUAL FEDERAL SAVINGS AND LOAN ASSOCIATION OF PENSACOLA, Plaintiff,
v.
PENSACOLA TRACTOR & EQUIPMENT CO., INC.; James E. Fausz and Ann S. Fausz, Husband and Wife; Antony E. Fiorentino and Claude R. Fiorentino, Husband and Wife; and Harry H. Schwartz and Pamela B. Schwartz, Husband and Wife, Defendants.
Nos. TCA 79-0940, PCA 80-0405 and PCA 80-0406.
United States District Court, N. D. Florida.
June 22, 1981.
*733 Charles R. Gardner, Tallahassee, Fla., for First Federal Savings and Loan Association of Gadsden Co.
W. Spencer Mitchem, G. Edison Holland, Jr., Pensacola, Fla., for Mutual Federal Savings and Loan Association of Pensacola.
Lawrence M. Watson, Jr., Orlando, Fla., Joseph R. Boyd, Tallahassee, Fla., for Peterson.
Robert L. Stone, William H. F. Wiltshire, John P. Kuder, Pensacola, Fla., for Angelo and Herring.
Charles Sherrill, Pensacola, Fla., for Pensacola Tractor & Equipment Co., Inc.
Antony E. Fiorentino, Pensacola, Fla., for Fausz, Fiorentino and Schwartz.
Harvey Simon, Washington, D. C., amicus curiae, Federal Home Loan Bank Board.

PARTIAL SUMMARY JUDGMENT
HIGBY, District Judge.
The Plaintiffs in these consolidated cases seek a judgment declaring the due-on-sale clauses in their mortgages legal and enforceable and that federal regulation of the subject preempts all impeding state law.[1] Needless to say the Defendants disagree. *734 Due-on-sale is the popular term for mortgage acceleration clauses which give a lender the power to accelerate a mortgage to maturity when ownership interest of the mortgage's collateral is transferred. Two of the clauses in question are identical.[2] The other says the same thing differently.[3] Essentially all three say that upon transfer of ownership, without the lender's consent, in all or part of the mortgaged property or any interest in it, with limited exceptions, the lender may accelerate the loan and declare the entire amount due and payable.
Each lawsuit arises in a slightly different context. But all share a major legal issue making consolidation and partial summary judgment appropriate. The Plaintiffs are federally chartered savings and loan associations authorized and created pursuant to the Federal Home Loan Bank Act[4] and functioning under the authority of the Federal Home Loan Bank Board (Board) as created and empowered by the Home Owners' Loan Act (HOLA).[5] The Defendants are either landowners on whose property a Plaintiff holds a mortgage or purchasers of another Defendant's mortgaged property. The controversy among the parties, clear from the stipulated facts, is over the Plaintiff lenders' right to enforce the mortgages' due-on-sale clauses in state court.
The lender-plaintiffs believe their right to accelerate upon sale is absolute, subject only to contractual provision, Board regulation, Congressional legislation, and their own good nature. In each case they have accelerated or intend to accelerate a mortgage upon property simply to require the purchaser to refinance the property or assume the existing loan at a higher rate. The Defendants say they may not.
The Defendants rely upon First Federal Savings and Loan Association of Englewood v. Lockwood, 385 So.2d 156 (Fla.2d D.C.A. 1980), which held Florida courts need not enforce a due-on-sale clause with foreclosure *735 when the sole purpose for acceleration is to coerce an interest increase. Lockwood's holding is "based on the historical purpose of acceleration clauses, which is to protect the security of lenders." Id. at 159. The parties have stipulated Lockwood is controlling Florida law and would be enforced in Florida courts to prevent the Plaintiffs from accelerating the due-on-sale clauses in this case for the purposes they have accelerated or intend to accelerate.
There is a difference between the clause presented in Lockwood and the clauses involved in this litigation. The mortgages involved here expressly state acceptance of an interest rate satisfactory to the lender will be a condition to the lender's waiver of its right to accelerate upon sale. I withheld issuance of this decision to allow the parties to address the effect of this variance upon the existence of an actual controversy in this case or the appropriateness of a federal constitutional ruling. The specific warning of these mortgages seemed likely to satisfy Lockwood's equitable objections to enforcement of the due-on-sale clause. Such was not the case. In Clearwater Federal Savings and Loan Association v. Knight, 396 So.2d 1238 (Fla.2d D.C.A.1981), the court affirmed without opinion a lower court order involving facts similar to those of this case. The court also decided that the issue was not one of great public interest.[6] So the controversy remains, and due to state court avoidance must be resolved upon federal constitutional grounds.
Lockwood stated the traditional use of due-on-sale clauses and a court's power to enforce or refuse to enforce them. Courts act as courts of equity in foreclosure proceedings. Mortgages traditionally exist to protect a lender's collateral and usually will not be foreclosed absent a showing the collateral is endangered. Consequently many courts have refused to enforce due-on-sale clauses without a showing that security was impaired. Courts have been noticeably reluctant to foreclose mortgages accelerated solely to increase interest. See, Mortgages  A Catalogue and Critique on the Role of Equity in the Enforcement of Modern-Day "Due-on-Sale" Clauses, 26 Arkansas Law Review 485 (1973).
Plaintiffs concede the traditional views. Tradition, they say, has been usurped by the HOLA and the Board's regulation. The Board regulation allowing due-on-sale clauses, argue the Plaintiffs, has preempted traditional state law on the subject and gives them an absolute right to accelerate upon sale. The Defendants, while purporting to stipulate to federal preemption of the law regarding inclusion and exercisability of due-on-sale clauses in federal savings and loan association mortgages, argue the preemption does not require state court enforcement in all circumstances. They rest their argument upon an equity court's general right to exercise or withhold its power as it deems fit. Defendants' stipulation is a false one. Their position is better stated in two simple alternatives. Either federal preemption of due-on-sale clauses does not encompass their enforcement or federal preemption may not require a state court to enforce them. Thus although general federal preemption of federal savings and loan associations is stipulated, the exact nature and extent of that preemption must be addressed.
The preemption doctrine is based on the Supremacy Clause of the United States Constitution which states:
Supreme Law of Land
This Constitution, and the Laws of the United States which shall be made in Pursuance thereof; and all Treaties made, or which shall be made, under the Authority of the United States, shall be the supreme Law of the Land; and the Judges in every State shall be bound *736 thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding.
Art. VI, Cl. 2, U.S. Const. Simply put, the preemption doctrine makes federal law on a subject superior to all state law on a subject if the Framers or Congress manifested an intent to establish such superiority. If so, all state law to the contrary is without effect. See, McCulloch v. Maryland, 17 U.S. (4 Wheat.) 316, 4 L.Ed. 579 (1819).
Congressional authority to legislate in an area is the first question to address in a preemption analysis. Jones v. Rath Packing Co., 430 U.S. 519, 97 S.Ct. 1305, 51 L.Ed.2d 604 (1977); Northern States Power Co. v. Minnesota, 447 F.2d 1143 (8th Cir. 1971), aff'd mem., 405 U.S. 1035, 92 S.Ct. 1307, 31 L.Ed.2d 576 (1972). Congressional authority to regulate savings and loan associations is unquestioned by the parties. With that question disposed of, the remaining question is has Congress preempted state law on the enforceability of due-on-sale clauses?
Consideration under the Supremacy Clause starts with the basic assumption that Congress did not intend to displace state law. See Rice v. Santa Fe Elevator Corp., 331 U.S. 218, 230 [67 S.Ct. 1146, 1152, 91 L.Ed. 1447] (1947). But as the Court stated in Rice,

"Such a purpose [to displace state law] may be evidenced in several ways. The scheme of federal regulation may be so pervasive as to make reasonable the inference that Congress left no room for States to supplement it. Pennsylvania R. Co. v. Public Service Comm'n, 250 U.S. 566, 569 [40 S.Ct. 36, 37, 64 L.Ed. 1142]; Cloverleaf Butter Co. v. Patterson, 315 U.S. 148 [62 S.Ct. 491, 86 L.Ed. 754]. Or the Act of Congress may touch a field in which the federal interest is so dominant that the federal system will be assumed to preclude enforcement of state laws on the same subject. Hines v. Davidowitz, 312 U.S. 52 [61 S.Ct. 399, 85 L.Ed. 581]. Likewise, the object sought to be obtained by the federal law and the character of obligations imposed by it may reveal the same purpose. Southern R. Co. v. Railroad Commission, 236 U.S. 439 [35 S.Ct. 304, 59 L.Ed. 661]; Charleston & W. C. R. Co. v. Varnville Co., 237 U.S. 597 [35 S.Ct. 715, 59 L.Ed. 1137]; New York Central R. Co. v. Winfield, 244 U.S. 147 [37 S.Ct. 546, 61 L.Ed. 1045]; Napier v. Atlantic Coast Line R. Co. [272 U.S. 605, 47 S.Ct. 207, 71 L.Ed. 432] supra. Or the state policy may produce a result inconsistent with the objective of the federal statute. Hill v. Florida, 325 U.S. 538 [65 S.Ct. 1373, 89 L.Ed. 1782]." 331 U.S., at 230, 67 S.Ct. at 1152.
Maryland v. Louisiana, ___ U.S. ___, ___, 101 S.Ct. 2114, 2129, 68 L.Ed.2d 576 (1981). See, also, Jones v. Rath Packing Co., 430 U.S. 519, 97 S.Ct. 1305, 51 L.Ed.2d 604 (1977); Florida Avocado Growers v. Paul, 373 U.S. 132, 83 S.Ct. 1210, 10 L.Ed.2d 248 (1963). Northern States Power Company v. Minnesota, 447 F.2d 1143 (8th Cir. 1971) at 1146, 1147, aff'd mem., 405 U.S. 1035, 92 S.Ct. 1307, 31 L.Ed.2d 576 (1972). Three of these indications of preemption apply in this case. They are pervasive regulation, federal interest, and conflict. The theories are closely linked.
Preemption is implied "where the scheme of federal regulation is so pervasive as to make reasonable the inference that there is no room for state action. Ray v. Atlantic Richfield Co., 435 U.S. 151, 157, 98 S.Ct. 988, [994] 55 L.Ed.2d 179 (1978)." Conference of Federal Savings and Loan Associations v. Stein, 604 F.2d 1256 at 1260 (9th Cir. 1979), aff'd mem., 445 U.S. 921, 100 S.Ct. 1304, 63 L.Ed.2d 754 (1980). Analysis should be cautious. The need for judicial reluctance to find federal preemption in traditionally state matters is greatest when preemption is implied. Courts consequently take a very detailed look at the subject matter of a law, the federal legislation, the federal regulation, and the state legislation involved, restricting preemption to only the narrowest possible subject matter.
The analysis is segmented. Preemption is limited to the narrowest portion of the *737 state law possible. Ray v. Atlantic Richfield Co., 435 U.S. 151, 98 S.Ct. 988, 55 L.Ed.2d 179 (1978), is a fine example. The State of Washington enacted a Tanker Law comprehensively regulating tankers operating in that majestic body of water, the Puget Sound. Atlantic Richfield promptly sued for a declaration that the statute was invalid under the Supremacy Clause because it was preempted by the Ports and Waterways Safety Act of 1972 (PWSA), 33 U.S.C. § 1221 et seq. The PWSA is a federal law which extensively regulates all coastwise seagoing steam vessels including tankers operating in the Puget Sound. Atlantic Richfield and the United States (as amicus curiae) argued the PWSA completely preempted the Tanker Law. The Court rejected that argument. It looked instead at each provision of the Tanker Law and then examined federal legislation to determine if state law on that particular narrow subject had been preempted. Thus Washington's statute requiring design features, including twin screws and double bottoms, was preempted by federal minimum design requirements while a law requiring tug boat escorts for tankers not meeting Washington's design criteria was not preempted because that was a matter of local traffic not entirely occupied by the federal government. Taking a similar close look at the subject matter here I find federal preemption of the subject of enforcing due-on-sale clauses to raise interest rates.
Preemption may be caused by administrative regulation as well as statutes. Bethlehem Steel Co. v. New York State Labor Relations Board, 330 U.S. 767, 67 S.Ct. 1026, 91 L.Ed. 1234 (1947). Congressional delegation of authority to act in an area alone may preempt state action in the area. Id. Administrative regulations are the source of preemption in this case. The Home Owners' Loan Act does not specifically address due-on-sale clauses. It does authorize wide-ranging regulation of federal savings and loan associations. 12 U.S.C. § 1464(a)(1); Glendale Federal Savings and Loan Association v. Fox, 481 F.Supp. 616 (C.D.Cal.1979). Operating under this grant of authority the Board has promulgated the myriad of regulations governing savings and loans, their investment practices, their lending practices, employment practices, and virtually every aspect of their existence from "cradle to ... corporate grave." California v. Coast Federal Savings and Loan Association, 98 F.Supp. 311, 316 (S.D.Cal. 1951). "The pertinent inquiry at this point thus becomes whether" the Board "has addressed and acted upon the question ...." Ray v. Atlantic Richfield Co., 435 U.S. 151, 174, 98 S.Ct. 988, 1003, 55 L.Ed.2d 179, 199 (1979).
Federal Home Loan Board regulation of federal savings and loan associations is sweeping. Its pervasiveness has inspired courts to find the subject entirely preempted. See, e. g., Conference of Federal Savings and Loan Associations v. Stein, 604 F.2d 1256, 1260 (9th Cir. 1979), aff'd mem., 445 U.S. 921, 100 S.Ct. 1304, 63 L.Ed.2d 754 (1980), ("The broad regulatory authority over the federal associations conferred upon the Bank Board by HOLA [Home Owners' Loan Act] does wholly preempt the field of regulatory control over these associations."); First Federal Savings and Loan Association of Phoenix v. Development and Management Enterprises, Inc., No. Civ. 79-880 PHX-EHC, Partial Judgment (April 2, 1981) at 2, ("The broad regulatory authority over federal savings and loan associations conferred upon the Federal Home Loan Bank Board by the Home Owners Loan Act of 1933 wholly preempts the field of regulatory control over First Federal Savings and Loan Association of Arizona."); Glendale Federal Savings and Loan Association v. Fox, 481 F.Supp. 616, 632-633 (C.D.Cal. 1979) ("Federal law, including specifically 12 C.F.R. § 545.6-11(f) & (g), exclusively governs the validity and exercisability of due-on-sale clauses included in the loan instruments of federally-chartered savings and loan associations executed after June 8, 1976."). I cannot find the wholesale preemption pronounced by those courts. But the Board has specifically regulated due-on-sale clauses and interest increases. Its regulations have preempted state law on the subject.
*738 Due-on-sale clauses are specifically authorized by Title 12, Code of Federal Regulations, Section 545.8-3(f) (1980), formerly Title 12, Code of Federal Regulations, Section 545.6-11, which reads:

Due-on-sale clauses. An association continues to have the power to include, as a matter of contract between it and the borrower, a provision in its loan instrument whereby the association may, at its option, declare immediately due and payable sums secured by the association's security instrument if all or any part of the real property securing the loan is sold or transferred by the borrower without the association's prior written consent. Except as provided in paragraph (g) of this section with respect to loans made after July 31, 1976, on the security of a home occupied or to be occupied by the borrower, exercise by the association of such option (hereafter called a due-on-sale clause) shall be exclusively governed by the terms of the loan contract, and all rights and remedies of the association and borrower shall be fixed and governed by that contract.
The plain words of the regulation alone should make clear the federally guaranteed right of the Plaintiffs in these cases to exercise the due-on-sale clause unless the assuming property buyers accept a new interest rate. The regulation states a savings and loan association may include a due-on-sale clause in its contract with the borrower. And it states exercise of the option will be governed by the contract. As previously noted the contracts in these cases plainly state acceptance in writing of an interest rate acceptable to the association may be required before the association waives its right to accelerate under the due-on-sale clause upon sale. The contracts are in complete compliance with the regulation. If there were any doubt about federal regulation in the due-on-sale area and the extent of its reach, the doubt is resolved by the Board's advisory opinion to the court in Schott v. Mission Federal Savings and Loan Association, Case No. CIV-75-366 WMB (C.D.Cal.). In its Advisory Opinion, Resolution No. 75-647 (July 30, 1975), the Board concludes:
(1). Federal law exclusively governs the validity of "due on sale" clauses in the loan instruments of Federal savings and loan associations.
* * * * * *
(4). The "due on sale" clause is vital and necessary to enable savings and loan associations to adjust their loan portfolios [an euphemism for increasing interest rates] towards current market rates, thereby protecting the associations' financial stability, and enabling them to make new home loans at lower interest rates than otherwise would be necessary to maintain an adequate yield on their mortgage portfolios.
Schott, supra, at 38.
Federal regulation on the subject of due-on-sale clauses is pervasive. It is direct; it is explicit; and it leaves no room for state law on the subject be it harsher or more lenient. This pervasiveness is one basis for finding implied preemption. It is not the only.
The purpose of Home Owners' Loan Act and the nature of the subject regulated also call for ruling that preemption is implicit. The Act is a child of the 1930s. It was created to aid small homeowners who were suffering mightily during the depression from bargains made and interest rates incurred in happier economic times. See, Conference of Federal Savings and Loan Associations v. Stein, 604 F.2d 1256 (9th Cir. 1979), aff'd mem., 445 U.S. 921, 100 S.Ct. 1304, 63 L.Ed.2d 754 (1980). Its purpose was "supplying direct relief to home owners." Prato v. Home Owners' Loan Corporation, 24 F.Supp. 844, 844 (D.Mass.1938), rev'd on other grounds, 106 F.2d 128 (1st Cir. 1939). See, also, United States v. Kay, 89 F.2d 19, 22 (2d Cir. 1937), vacated on other grounds, 303 U.S. 1, 58 S.Ct. 468, 82 L.Ed. 607 (1938). Over the years as America's economic system grew more complex, the statutory scheme, as federal regulation seems inevitably to do, grew too. One result of that growth is significant to this case. It is the Federal Home Loan Mortgage *739 Corporation (FHLMC) created by Title 12, United States Code, Section 1452 et seq. The FHLMC purchases and sells residential mortgages of federal home loan banks, federal savings and loan associations any member of a federal home loan bank, any financial institution whose deposits or accounts are insured by a United States agency, or certain state insured institutions. 12 U.S.C. § 1454(a). The Federal National Mortgage Association, Title 12, United States Code, Section 1716, et seq., performs much the same function for federally guaranteed mortgages. Together they form a secondary mortgage market essential to maintenance of the savings and loan association system.
Institutions receiving savings are not necessarily the institutions with a high loan demand. In fact there is a geographical division between the two. The secondary mortgage market helped solve this problem by purchasing and selling mortgages. Savings and loan associations with a high loan demand but low savings deposits can sell their mortgages and receive in turn more cash to loan would-be home buyers. Savings and loan associations with a high deposit to loan ratio can purchase loans and gain income-producing assets for the deposits they could not loan. This system of mortgage sales serves to make money available to would-be small homeowners where it is needed.
The system worked well while interest rates were stable. When rates began rising problems appeared. Mortgages did not sell well when locked for 20 or 30 years to an interest rate much lower than that available upon other securities. With mortgages not selling, institutions with a high loan demand to deposit ratio cannot obtain enough funds to satisfy their loan demands. Exercise of the due-on-sale clause is one way the Board has chosen to solve the problem. Most homes are resold within 10 years of purchase. Allowing renegotiation at sale protects savings and loan associations from being stuck for 20 or 30 years with loans returning far less than the prevailing interest rate. And most importantly they make savings and loan association mortgages marketable securities thus providing loanable assets to the institutions.
Use of a due-on-sale clause to obtain a higher interest rate serves another purpose for the savings and loan association system. That is to protect savings and loan associations from rising interest rates. Associations generally borrow short and lend long. This means the money they borrow, generally savings account deposits usually available upon demand, must be repaid in a short time, while the repayment period for the loans they make is long, often 20 or 30 years. During times of rising interest rates the cost of funds the associations borrow rises more rapidly than the yield on money they have loaned. Accelerating mortgages upon sale of property gives associations a method of protecting themselves from rising interest rates, a method the Board has found necessary for their continued effective functioning.
This is the judgment the Board reached in the exercise of its administrative discretion and the reasoning it followed.[7] It is not necessarily palatable. At the least it glumly assumes implacable inflation. Some cynics might say it protects savings and loan associations from the consequences of erroneous economic planning. But the Board's exercise of its specialized administrative discretion has not been challenged. And it can fairly be said to further HOLA's aim.
The Board has determined the power to renegotiate interest rates upon transfer of the property is essential to the savings and loan association system's success. Thus by *740 rule and resolution it has asserted the unique federal interest. Uniform marketability is an inherent underpinning of that interest, as is continued availability of funds for loaning. They would not exist if each state could determine if the due-on-sale clause could be used to require an interest rate change. The importance of the mortgage resale system and sufficient association income to the HOLA gives the federal government an overriding interest in the subject matter demanding uniformity.
Allowing Florida to refuse to enforce due-on-sale clauses when acceleration is to raise interest rates would thus frustrate the HOLA's purpose as implemented by the Board. Preemption is required to further that purpose because the association system calls for federal control of the securities marketed.
Irreconcilable conflict between Florida law and federal law is the final reason for finding preemption. When federal law and state law conflict irreconcilably, federal law is supreme. The test is whether each sovereign's law "can be enforced without impairing the federal superintendence of the field ...." Florida Avocado Growers v. Paul, 373 U.S. 132, 142, 83 S.Ct. 1210, 1217, 10 L.Ed.2d 248, 257 (1963). First Federal Savings and Loan Association v. Greenwald, 591 F.2d 417 (1st Cir. 1979). The conflict here is manifest. Florida courts are refusing to honor federal law and thereby subverting a detailed, Congressionally created scheme.
Throughout this case the Defendants have purportedly stipulated to preemption. Their refrain has been that state regulation of a federally preempted field is not involved. Florida's courts, they argue, have simply refused to enforce the federal law. The argument follows from the holding in First Federal Savings and Loan Association of Englewood v. Lockwood, 385 So.2d 156 (Fla.2d D.C.A.1980). The court ruminated upon the effect of federal regulations:
A close reading of the federal regulation in question reveals no procedural provisions for a distinct cause of action in federal court for enforcement purposes. Thus, a federal savings and loan seeking foreclosure against a Florida resident must file its action in a Florida circuit court. When a foreclosure complaint is filed in a Florida court seeking an equitable remedy, it follows that traditional equitable defenses and considerations, long recognized by these courts, are available to all the litigants. "It is a strange argument that permits one to pick and choose what portion of the law binds him." First National Bank of Logan v. Walker Bank & T. Co., 385 U.S. 252, 87 S.Ct. 492, 17 L.Ed.2d 343 (1966).
The true issue before us is not whether a due-on-sale clause may be authorized or even required in a federal association mortgage instrument, but whether the due-on-sale clause must be automatically enforced by a state court without regard to traditional principles of equity. In other words, where a federal savings and loan mortgage instrument includes an acceleration clause exercisable at the option of the lender, and the lender elects to activate the clause and, subsequently, to place the matter before a state court in an effort to obtain equitable relief in foreclosure, must the state court grant the desired relief without recourse to traditional equitable considerations? We answer the question by stating that a plaintiff who initiates a suit in equity must be subject to all of the applicable consequences of that action and not merely those to which he chooses to submit. This is especially true in the instant case where applicable federal regulations exhibit a noticeable gap in the area of enforcement.
First Federal Savings and Loan Association of Englewood v. Lockwood, 385 So.2d 156 (Fla.2d D.C.A.1980) at 159, 160 (footnote omitted).
Both the court's opinion and the defendant's argument belabor a man of straw. In our federal system, courts of all 51 sovereigns *741 apply the governing law regardless of the judicial forum utilized. Much federal litigation is governed by state law. State courts often apply the law of another state. An entire arcane body of learning called Conflict of Law has evolved to help state courts determine which state's law applies. State courts likewise apply and enforce federal law. If they refuse to honor the supremacy of federal laws, federal courts can enforce them. State law prohibition against compliance with federal law "cannot survive the command of the Supremacy Clause of the United States Constitution." Washington v. Washington State Commercial Passenger Fishing Vessel Association, 443 U.S. 658, 695, 99 S.Ct. 3055, 3079, 61 L.Ed.2d 823, 851 (1979). This is true whether the law comes from the Constitution, statute, or regulation.
Plaintiffs sought a much broader holding. They argued that the entire field of due-on-sale enforceability had been preempted and state courts had no choice but to enforce the clauses if the mortgage holder showed sale of the property by the borrower without permission. Other courts have reached that conclusion. See, e. g., First Federal Savings and Loan Association of Phoenix v. Development and Management Enterprises, Inc., Partial Judgment, No. Civ. 79-880 PHX-EHC (D.Ct.Ariz. April 2, 1981); Bailey v. First Federal Savings and Loan Association of Ottawa, 467 F.Supp. 1139 (C.D.Ill. 1979); Fischer v. First Federal Savings and Loan Association of Lenawee County, File No. 80-01-756, Opinion (Mich.Cir.Ct. Lenawee Co. January 19, 1981). The microscopic focus of implied preemption analysis and the often emphasized importance of respecting state police powers preclude me going so far. The subject matter, even in light of the extensive regulation, is not one traditionally calling for complete federal preemption due to the fundamental divisions of power between the states and the federal government. See, White Mountain Apache Tribe v. Bracker, 448 U.S. 136, 100 S.Ct. 2578, 65 L.Ed.2d 665 (1980), and Central Machinery Co. v. Arizona State Tax Commission, 448 U.S. 160, 100 S.Ct. 2592, 65 L.Ed.2d 684 (1980), for examples of an area, Indian affairs, calling for complete preemption. The federal purpose preemption protects here is the marketability of federal savings and loan associations' mortgages and association income. The Board has determined the right to accelerate upon sale in order to raise interest rates is essential to those purposes. No such determination of overriding federal interest has been made of any other reason for enforcing the due-on-sale clause. Neither does the pervasiveness of the regulation justify a broader finding of preemption. Comprehensive federal regulation for one purpose does not import displacement of all state control. Florida Avocado Growers v. Paul, 373 U.S. 132, 83 S.Ct. 1210, 10 L.Ed.2d 248 (1963). Accord, Douglas v. Seacoast Products, Inc., 431 U.S. 265, 97 S.Ct. 1740, 52 L.Ed.2d 304 (1977); Ray v. Atlantic Richfield Co., 435 U.S. 151, 98 S.Ct. 988, 55 L.Ed.2d 179 (1978); Jones v. Rath Packing Co., 430 U.S. 519, 97 S.Ct. 1305, 51 L.Ed.2d 604 (1977).
My conclusion is that federal law, embodied in Title 12, Code of Federal Regulations, Section 545.8-3(f) (1980), preempts all state law upon acceleration under due-on-sale clauses to obtain a higher interest rate from a person purchasing property mortgaged by a federally chartered savings and loan institution. In those narrow circumstances the clause must be enforced. Partial summary judgment is granted the Plaintiffs and denied the Defendants.
DONE AND ORDERED.
NOTES
[1] The lawsuit is brought under the jurisdictional grant of Title 28, United States Code, Section 1331(a), federal question jurisdiction. Title 28, United States Code, Section 2201, the declaratory judgment act, makes the remedy sought available. Defendants moved at the beginning of this lawsuit to dismiss for lack of jurisdiction. The motions were denied. They have been renewed in virtually every pleading, argument, and letter since. In all their renewed forms the motions are denied.

Some courts have not agreed. See, Mitchell v. Georgia Federal Savings and Loan Association, Civil Action No. C80-630A, Order of August 20, 1980 (N.D.Ga.); Florida Federal Savings and Loan Association v. Bauer, 515 F.Supp. 869 (M.D.Fla.1981). Mitchell is different in that the savings and loan association was a defendant not a plaintiff. The decision relied upon the statements in Gully v. First National Bank, 299 U.S. 109, 57 S.Ct. 96, 81 L.Ed. 70 (1936), and Phillips Petroleum Co. v. Texaco, Inc., 415 U.S. 125, 94 S.Ct. 1002, 39 L.Ed.2d 209 (1974), that the jurisdictional basis must appear on the face of the complaint. Here the federal question, preemption, appears in the complaints. The complaints here seek congressionally authorized declaratory relief. They do more than anticipate a defense. They allege an actual controversy over a federal question, an allegation since proven to be quite true. The issue was presented in the complaint in Bauer. I respectfully disagree with that judge's evaluation of the existence of a case or controversy. All three complaints here allege that unless a federal law is interpreted to preempt state law the Plaintiffs will not be entitled to foreclose their mortgages. They have alleged a right which "will be supported if the Constitution or laws of the United States are given one construction or effect, and defeated if they receive another." Gully v. First National Bank, 299 U.S. 109, 112, 57 S.Ct. 96, 97, 81 L.Ed. 70 (1936).
[2] In First Federal Savings and Loan Association of Gadsden County v. Peterson, TCA 79-0940, and Mutual Federal Savings and Loan Association of Pensacola v. Angelo, PCA 80-0405, the clauses state:

Transfer of the Property; Assumption. If all or any part of the Property or an interest therein is sold or transferred by Borrower without Lender's prior written consent, excluding (a) the creation of a lien or encumbrance subordinate to this Mortgage, (b) the creation of a purchase money security interest for household appliances, (c) a transfer by devise, descent or by operation of law upon the death of a joint tenant or (d) the grant of any leasehold interest of three years or less not containing an option to purchase, Lender may, at Lender's option, declare all the sums secured by this Mortgage to be immediately due and payable. Lender shall have waived such option to accelerate if, prior to the sale or transfer, Lender and the person to whom the Property is to be sold or transferred reach agreement in writing that the credit of such person is satisfactory to Lender and that the interest payable on the sums secured by this Mortgage shall be at such rate as Lender shall request.
[3] The clause involved in Mutual Federal Savings and Loan Association v. Pensacola Tractor and Equipment Co., Inc., PCA 80-0406, says:

This mortgage shall become due and payable forthwith at the sole option of the mortgagee if the mortgagor shall convey away said premises or sell same under contract or if the legal or equitable title to said premises shall become vested in any other person or persons in any manner whatsoever; and it is expressly understood and agreed that in the event the mortgagee is otherwise agreeable to the non-exercise of its said option, it may, as a condition or inducment [sic] to such non-exercise, require changes in the terms of this mortgage and any note and additional advance agreements the payment of which are secured hereby, to include without limitation changes in the interest rate, amortization period and amount of monthly principal and interest installments.
[4] 12 U.S.C. § 1421 et seq.
[5] 12 U.S.C. §§ 1461-1468.
[6] Article V, § 3(b)(4) of the Florida Constitution (1980) provides for Florida Supreme Court review of, among other things, questions "certified ... to be of great public importance ...." This is one of the few routes for review of district court of appeal decisions since passage of a constitutional amendment designed to severely limit supreme court jurisdiction. Jenkins v. State, 385 So.2d 1356 (Fla.1980); Yates, The New Chief Justice  Alan C. Sundberg, Vol. LIV, No. 9, Fla.B.J. 582, 584 (October 1980).
[7] The foregoing summarizes the Board's reasoning in Parts II and III, pages 19-34 of Schott v. Mission Federal Savings and Loan Association, Case No. CIV-75-366 WMB (C.D.Cal.), Advisory Opinion, Resolution No. 75-647 (July 30, 1975). An appendix to that opinion sets forth the statistical justifications for the Board's position. Further pragmatic analysis of the subject is contained in Bartke, Michigan's Looking Glass World of Due-On-Sale Clauses, 24 Wayne Law Rev. 971 (1978). See, also, Rose, Dark Days Ahead for Banks, Vol. 101, No. 13, Fortune, 86 (June 30, 1980).