WFS FINANCIAL INC., Plaintiff,

v.

Richard L. DEAN, Secretary, Wisconsin Department of Financial Institutions; Jean Plale, Director, Licensed Financial Services Unit, Wisconsin Department of Financial Institutions; Michael Mach, Administrator, Division Banking, Wisconsin Department of Financial Institutions; and James Doyle, Attorney General, State of Wisconsin, in their official capacities, Defendants.

No. 99–C–0345–C.

United States District Court,
W.D. Wisconsin.

Nov. 26, 1999.

Russell S. Long, Davis & Kuelthau, S.C., Milwaukee, WI, for WFS Financial Inc.

Stephen J. Nicks, Asst. Atty. General, Madison, WI, for Defendants.

## OPINION AND ORDER

CRABB, District Judge.

Plaintiff WFS Financial brings this civil action for declaratory and injunctive relief, seeking a determination that it is not subject to Wisconsin laws regulating lending activities because it is an operating subsidiary of a federal savings bank. Defendants are all state officials involved in the oversight or enforcement of the Wisconsin regulatory statutes at issue. Defendants dispute plaintiff's contention that the Office of Thrift Supervision acted within its authority and discretion in extending the benefits of federal preemption enjoyed by federal savings banks to the operating subsidiaries of such banks and they intend to

continue to subject plaintiff to the laws and regulations of the state of Wisconsin governing sales finance companies such as plaintiff.

I conclude that the Office of Thrift Supervision acted non-arbitrarily and well within its delegated authority to advance the purposes of the Home Owners' Loan Act of 1933, 12 U.S.C. §§ 1461–1470, when it promulgated the regulations allowing federal savings and loan associations to acquire and operate subsidiaries that would be regulated by the office in the same manner as their parent organizations and equally exempt from state regulation. From this conclusion, it follows that defendants may not apply any regulations to operating subsidiaries that they do not apply to federal savings and loan associations. Plaintiff's request for declaratory and injunctive relief will be granted.

The parties have an actual controversy involving the interpretation of federal law. Therefore, this court has subject matter jurisdiction to hear the case. 28 U.S.C. § 1331.

For the purpose of deciding this motion, I find that the following facts from the parties' stipulation.

## UNDISPUTED FACTS

Plaintiff WFS Financial Inc. is a subsidiary of Western Financial Bank, which is a federal savings bank organized and operating under the Home Owners' Loan Act of 1933, 12 U.S.C. §§ 1461–1470, and the regulations of the Office of Thrift Supervision. Effective April 6, 1995, the Office of Thrift Supervision approved Western Financial Bank's application to designate WFS, known then as Westcorp Financial Services, Inc., as an operating subsidiary under the Office of Thrift Supervision regulations. Except for a name change, plaintiff's corporate structure and operations have not changed materially since its approval as an operating subsidiary of Western Financial Bank.

Western Financial Bank owns approximately 87% of the outstanding shares of plaintiff's common stock and exercises effective operating control of plaintiff. Plaintiff is a corporation duly organized under the laws of California. It is engaged in only those activities that are permitted for federal savings associations. It services automobile loan contracts originating in 42 states and, in addition, it purchases loans from automobile dealers and originates direct automobile loans.

Plaintiff has a certificate of authority issued by the state of Wisconsin to transact business in the state and is categorized by the state as a "sales finance company." Plaintiff holds sales finance company licenses under Wis. Stat. § 218.01; engages in "consumer transactions"; is registered under the Wisconsin Consumer Act; and pays certain fees to obtain the sales finance company licenses and to register under state law. Plaintiff has one office in this state. At present, 100% of its business in Wisconsin is dependent on the purchase of auto loan contracts from dealers. It makes no direct automobile loans in Wisconsin.

Plaintiff has written to the state to register its objection to being required to obtain licenses and to register under state law. Defendant Plale has advised plaintiff that the state does not agree with plaintiff's position that federal law preempts state regulation of sales finance company activity conducted by subsidiaries of federally chartered thrift institutions and that plaintiff's failure to maintain its license under Wisconsin law could subject it to the penalties set forth in Wis. Stat. § 218.01(2)(a) and put in jeopardy the licenses of the dealers from which plaintiff purchases contracts or leases.

In response to another letter from plaintiff to the effect that it was renewing its Wisconsin Consumer Act Registration under protest, defendant Plale wrote to plaintiff to say "that the Division of Banking [ ] does not recognize or give deference to assertions that the Office of Thrift Supervision [ ] has preempted State regulation of sales finance company activity conducted by subsidiaries of federally-

chartered thrift institutions." Parties' Stip. ¶ 16, Exh. D.

## OPINION

In an effort to ameliorate the deplorable condition of the home-financing industry in the 1930's after the failure of 1,700 state chartered savings and loan institutions, Congress enacted the Home Owners' Loan Act. The act was intended to be "a radical and comprehensive response to the inadequacies of the existing state systems.'" *Fidelity Federal Savings & Loan Assn. v. de la Cuesta,* 458 U.S. 141, 160, 102 S.Ct. 3014, 73 L.Ed.2d 664 (1982) (quoting *Conference of Federal Savings & Loans Assns. v. Stein,* 604 F.2d 1256, 1257 (9th Cir. 1979)). It provided for the creation of a system of federal savings and loan associations to be regulated by the Federal Home Loan Bank Board. In section 5 of the act, Congress gave the board extensive authority to take such actions as the board thought would best advance the purposes of the act. The section, now codified at 12 U.S.C. § 1464(a) provides:

> In order to provide thrift organizations for the deposit or investment of funds and for the extension of credit for homes and other goods and services, the Board is authorized, under such rules and regulations as it may prescribe, to provide for the organization, incorporation, examination, operation, and regulation of associations to be known as Federal savings and loan associations, or Federal savings banks, and to issue charters therefor, giving primary consideration to the best practices of thrift institutions in the United States. The lending and investment authorities are conferred by this section to provide such institutions the flexibility necessary to maintain their role of providing credit for housing.

Broader authority would be hard to imagine.

In 12 U.S.C. § 1462a(b), Congress delegated to the board's successor, the Office of Thrift Supervision, authority to "prescribe such regulations and issue such orders as the Director may determine to be necessary for carrying out this chapter ...." In 1992, the Office of Thrift Supervision acted pursuant to its delegated authority under §§ 1462a, 1463, 1464 and 1828, and proposed regulations to amend 12 C.F.R. Part 545 to add § 545.81, which would allow savings and loan associations to establish and acquire "operating subsidiaries." *See* 57 Fed.Reg. 12,228, 48,942 (1992) and 61 Fed.Reg. 66,561 (1996); *see also* 12 C.F.R. § 545.81. The regulations were promulgated in final form in 1992. They provide that an operating subsidiary may engage in only those activities its parent is legally authorized to undertake directly; the parent must own at least 50 percent of the corporation's outstanding voting stock; and no other party can have effective operating control of the corporation. The operating subsidiary is subject to the same federal regulations as its parent and is treated as a department or division of its parent for regulatory purposes. Further, state laws otherwise applicable to the activities of the operating subsidiary are preempted to the same extent as they would be if the activities were being carried out directly by the parent savings and loan association.

■ It is indisputable that federal agencies may promulgate regulations that preempt state law. Their authority flows from the supremacy clause of the Constitution, Art. VI, cl. 2, which gives Congress the authority either to enact legislation preempting state law or to delegate the same authority to its executive agencies. *See de la Cuesta,* 458 U.S. at 154, 102 S.Ct. 3014: "Federal regulations have no less pre-emptive effect than federal statutes. Where Congress has directed an administrator to exercise his discretion, his judgments are subject to judicial review only to determine whether he has exceeded his statutory authority or acted arbitrarily."

■ I can find no basis on which to conclude that the Office of Thrift Supervision exceeded its delegated authority when it promulgated regulations permitting federal savings and loan associations to ac-

quire and operate subsidiaries that would be regulated by the office and not by the states in which they were located. The office made the determination that allowing savings and loans associations to acquire and operate subsidiaries

> would enhance a savings and loan association's ability to structure its operations to maximize efficiency and cost-savings. It may also allow associations to pool resources and spread the cost of high overhead among several savings associations for capital intensive services such as data processing and maintenance of business records, and to insulate themselves from potential liability that would result if the activity were conducted directly by the associations.... The operating subsidiary authority also allows the parent association to obtain outside equity capital beyond its initial investment....

57 Fed.Reg. 12226 at 12227. Although defendants may disagree with the choice the Office of Thrift Supervision took, they cannot argue plausibly that it was outside the board's authority to make the choice as a means of furthering the act's purposes of preserving the safety and soundness of the system, protecting federal deposit insurance funds and promoting the provision of credit for homes and other goods and services in accordance with the best practices of American thrift institutions.

The Office of Thrift Supervision made the additional determination that it could not fulfill the act's statutory mandates unless it regulated the operating subsidiaries in the same manner and to the same extent that it regulated their parents, thus leaving no room for supplemental state requirements that could restrict the operations of the subsidiaries or add unnecessary costs. *Id.* Again, this is a decision that was well within the office's delegated authority to make. It was reasonable for the office to conclude that to the extent the operating subsidiaries are restricted by state regulation, they could not improve the safety, soundness and availability of credit of their parent organizations.

Defendants raise several challenges to the regulations, none of which is persuasive. First, they argue with no specific support that this court should not conclude that state laws are preempted because plaintiff could continue to comply with both state and federal regulations, as it has been doing for the last few years without apparent problem. This argument might be relevant if the finding of preemption depended upon finding a conflict between state and federal laws. *See, e.g., Louisiana Public Service Comm. v. Federal Communications Comm.,* 476 U.S. 355, 368, 106 S.Ct. 1890, 90 L.Ed.2d 369 (1986) (preemption occurs when Congress expresses a clear intent to preempt state law, where Congress has legislated comprehensively, thus occupying entire field of regulation, or when there is outright or actual conflict between federal and state law, such as where compliance with both federal and state law is physically impossible in effect or where state law stands as obstacle to accomplishment and execution of full objectives of Congress). In fact, the Office of Thrift Supervision occupies the entire field of regulation, *see* 12 C.F.R. § 560.2. Even if it did not, there is a clear conflict between federal and state laws relating to loan-related fees, credit licensing, disclosure obligations and other lending requirements.

Defendants' second argument is that there is no clear congressional intent to extend regulatory preemptive power to state corporations that happen to be partially owned by federal savings associations. Of course, it is irrelevant that when Congress enacted the Home Owners' Loan Act in 1933 or amended the act in subsequent years, it did not have in mind that the Office of Thrift Supervision might authorize regulations that would permit the acquisition and operation of subsidiaries. It is well established that a "pre-emptive regulation's force does not depend on express congressional authorization to displace state law." *de la Cuesta,* 458 U.S. at 154, 102 S.Ct. 3014.

■ Defendants argue that the intent to preempt must be evident to anyone reading an act, *see, e.g., Gregory v. Ashcroft,* 501 U.S. 452, 111 S.Ct. 2395, 115 L.Ed.2d 410 (1991), and that no one reading the Home Owners' Loan Act could discern from it the intent to preempt state laws for state corporations that are operating subsidiaries of federal savings associations. This argument is foreclosed by the holding in *de la Cuesta,* 458 U.S. 141, 102 S.Ct. 3014, 73 L.Ed.2d 664. An agency may preempt state law through regulations that are within the scope of its delegated authority and that are not arbitrary. *Id.See also Time Warner Cable v. Doyle,* 66 F.3d 867, 875–76 (7th Cir.1995).

Defendants argue that Congress restricted the authority it delegated to the Office of Thrift Supervision to regulation of the *operations* of savings and loan associations and that the word cannot be stretched to include the acquisition and operation of subsidiaries. Even if I were to accept the dubious premise that it would be a stretch to extend the term operation to operating through a subsidiary, I could not say that it would be any stretch to read the term "organization" in the same phrase as covering the operating relationship of a parent and its subsidiary. To the contrary, it is clear that when Congress gave the office authority to provide for the "organization", incorporation, examination, operation and regulation of associations to be known as Federal savings and loan associations, it delegated authority broad enough to cover an organizational structure in which a savings and loan association organizes itself in the form of a parent with a subsidiary that undertakes activities the parent would be authorized to perform itself.

To read defendants' brief, one might think that the scheme envisioned by the Office of Thrift Supervision is nothing but a ploy to permit corporate subsidiaries of federal savings and loan associations to bilk the public with impunity, free from all laws and regulation, while giving the parent complete protection from any liability resulting from the actions of its unregulated offspring. The truth is that the subsidiary is exempt from only those laws and regulations that preemption principles would bar the state from applying to the savings and loan association that engaged in the same acts. It cannot exist as an operating subsidiary without the prior approval of the Office of Thrift Supervision. It is not exempt from federal laws and regulations that govern loans, consumer loan disclosures, loan fees and interest rates, any more than its parent is. Furthermore, it is subject to the same kind of regulation and monitoring as its parent to insure that it is operated in a way that will maintain the viability of its parent and the solvency of the federal deposit insurance system. *See* 12 U.S.C. § 1828m.

### ORDER

IT IS ORDERED that the motion for summary judgment of plaintiff WFS Financial, Inc. is GRANTED. FURTHER, IT IS DECLARED that state laws and regulations may be applied to plaintiff WFS Financial, Inc., only if those laws are applicable to federal savings and loan associations operating in the state of Wisconsin; and defendants Richard L. Dean, Secretary, Wisconsin Department of Financial Institutions, Jean Plale, Director, Licensed Financial Services Unit, Wisconsin Department of Financial Institutions, Michael Mach, Administrator, Division Banking, Wisconsin Department of Financial Institutions and James Doyle, Attorney General, State of Wisconsin, in their official capacities, are ENJOINED from enforcing against plaintiff WFS Financial, Inc. any state law or regulation that could not be applied to a federal savings and loan association operating in the state of Wisconsin.